WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John L. Sweet, a married man,<br><br>                    Plaintiff,<br><br>v.<br><br>JPMorgan Chase Bank, N.A., a New York corporation,<br><br>                    Defendant. | No. CV-13-01251-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Defendant JPMorgan Chase Bank's Motion to Dismiss. (Doc. 8.) For the following reasons, the Motion is granted.

**BACKGROUND**

This case arises from the trustee sale of Plaintiff's real property after he defaulted on a mortgage loan serviced by Defendant bank. Plaintiff and his wife purchased the relevant real property ("Property") in Anthem, Arizona, on or about August 14, 2003. (Doc. 1, ¶ 7.) Plaintiff and his wife received a mortgage loan to facilitate the purchase of the Property. (*Id.*) On or about that same date, Plaintiff and his wife executed a promissory note ("Note") in the amount of $180,000, payable over 30 years to their lender, and executed a Deed of Trust ("Deed") naming the Property as security for re-payment of the Note. (*Id.* at ¶¶ 8–9.) Three months later, Plaintiff received written notice that Defendant JP Morgan Chase ("Chase") had become the servicer of the mortgage loan and that all payments were now due to them. (*Id.* at ¶ 10.)

1    Plaintiff made all payments on the loan to Chase until June 2008, when he fell

2    behind on his payments due to financial hardship. (*Id.* at ¶ 12.) On or about November

3    28, 2008, Chase initiated foreclosure proceedings on the property by causing the trustee

4    under the Deed of Trust to record a Notice of Trustee's Sale, alleging that Plaintiff had

5    defaulted on the loan under the terms of the Note and Deed. (*Id* at ¶ 13.) Pursuant to the

6    terms of the Deed, Plaintiff had the right to reinstate the loan by paying Defendant all

7    amounts in arrears and expenses incurred in enforcing the Deed on or before the period

8    specified under Arizona law. (*Id.* at ¶ 14.) According to Arizona law, Plaintiff had until

9    5:00 p.m. mountain standard time on the last day before the date of the sale of the

10   Property to tender the amounts required to reinstate the loan. Ariz. Rev. Stat. Ann. § 33-

11   813A.

12   Plaintiff alleges that on June 25, 2009, the day before the scheduled trustee sale on

13   June 26, 2009, he spoke with both the Trustee and Defendant and "clearly communicated

14   his intention to exercise the right of reinstatement." (Doc. 1, ¶ 16.) However, it is

15   uncontested that Plaintiff did not actually pay any funds to Chase on that date. Instead,

16   Plaintiff asserts that he offered to immediately transfer all necessary funds for

17   reinstatement to Chase, but indicated that he preferred to pay with his pension fund using

18   funds that would become available for distribution on July 1, 2009. (*Id.* at ¶ 17.) He

19   claims that Chase agreed to accept the funds for reinstatement on July 1 and asked him to

20   fax proof that such funds would be available from his pension fund on that date. (*Id.*)

21   Plaintiff sent a fax to Chase on June 25 with documentation of the funds available in his

22   pension fund, to be paid out July 1. (Doc. 1-7.) Beyond this fax to Defendant that shows

23   Plaintiff was to receive funds from the pension fund on July 1, Plaintiff neither alleges

24   nor provides any evidence that his agreement from Chase to accept the reinstatement

25   after the deadline was ever put in writing.

26   On June 26, 2009, Chase proceeded to complete the foreclosure sale of the

27   Property as scheduled. (Doc. 1, ¶ 20.)  Plaintiff now alleges that in going forward with

28   the sale despite the alleged verbal agreement to accept reinstatement payment after the

1    statutory deadline, Defendant breached both the mortgage contract and the covenant of
2    good faith and fair dealing implied in that contract. (Doc. 1, ¶¶ 21–33.) Plaintiff seeks
3    consequential damages. (*Id*. at ¶¶ 25, 33.) Defendant Chase moves to dismiss on the
4    grounds that Plaintiff waived his claims as a matter of law, or, in the alternative, that
5    Plaintiff fails to allege facts that state a cognizable claim. (Doc. 8.)

6                                      **DISCUSSION**

7    **I.    Legal Standard**

8          Rule 12(b)(6) is designed to "test the legal sufficiency of a claim." *Navarro v.*
9    *Block,* 250 F.3d 729, 732 (9th Cir. 2001). To survive dismissal for failure to state a claim
10   pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than
11   "labels and conclusions" or a "formulaic recitation of the elements of a cause of action";
12   it must contain factual allegations sufficient to "raise a right to relief above the
13   speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "a
14   complaint need not contain detailed factual allegations ... it must plead 'enough facts to
15   state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.,*
16   534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has
17   facial plausibility when the plaintiff pleads factual content that allows the court to draw
18   the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*
19   *v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Plausibility
20   requires "more than a sheer possibility that a defendant has acted unlawfully." *Twombly*,
21   550 U.S. at 555. Accordingly, a plaintiff must do more than employ "labels,"
22   "conclusions," or a "formulaic recitation of the elements of a cause of action." *Id* .
23   When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll
24   allegations of material fact are taken as true and construed in the light most favorable to
25   the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). However,
26   legal conclusions couched as factual allegations are not given a presumption of
27   truthfulness, and "conclusory allegations of law and unwarranted inferences are not
28   sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir.

1998).

**II.     Statutory Waiver**

Under Arizona law, a trustor waives all defenses and objections to challenge the validity of a trustee's sale that he did not raise in an action resulting in the issuance of injunctive relief by 5:00 p.m. mountain standard time on the last business day before the scheduled date of the sale. Ariz. Rev. Stat. Ann. § 33-811. Here, Plaintiff does not allege he secured such relief.  While Arizona state and federal courts have found the statute to bar a variety of claims challenging the validity of a trustee's sale, it is unclear whether the statute bars the claims here. For instance, in *Madison v. Groseth*, the Plaintiff attempted to challenge the scheduled trustee's sale of her home, but she did not secure the injunction required to preserve later claims under the statute. 230 Ariz. 8, 10–11, 279 P.3d 633, 635–36 (Ct. App. 2012). After the sale was complete, she brought an action against the purchasers of her property for various tort claims, premised on her continued assertion that the trustee's sale had been invalid. *Id.* There, the Arizona Court of Appeals affirmed the trial court's decision that Madison's tort claims were barred by the statutory waiver. In that case, Madison's claims were based on alleged deficiencies of the trustee's sale that she could have asserted, and actually did assert, before the date of the sale. As such, her only way to preserve her claims under the statute was to secure an injunction by 5:00 p.m. on the day before the sale. She did not succeed in doing so, and thus her later claims premised on the validity of the sale were barred.

Here, Plaintiff had no such claims before the date of the sale. As of the day before the sale, he claimed to be under the impression that Chase had agreed to wait for reinstatement payment until July 1. He arguably had no basis on which to seek an injunction before the statutory deadline. Instead, Plaintiff's current claims did not actually arise until the sale occurred despite the alleged agreement. Plaintiff's claims are thus distinguishable from those barred in *Madison.* However, the Court need not decide this issue as Plaintiff fails to state any cognizable claim.

/ / /

**III.    Breach of Contract**

Plaintiff alleges that Defendant breached the terms of the mortgage contract by failing to reinstate the loan and by failing to honor the alleged agreement under which Plaintiff would pay the necessary funds by July 1. (Doc. 1, ¶ 23.) Pursuant to the Deed of Trust, a borrower could reinstate the loan after acceleration if he met certain conditions by either a deadline imposed in the Deed or in applicable law. (Doc. 1-5 at § 19.) These conditions include that the borrower "pays Lender all sums which would then be due under this Security Instrument and the Note as if no acceleration had occurred" and pay other expenses incurred in enforcing the Note. (*Id.*) As described above, the applicable deadline for meeting these conditions under state law was by 5:00 p.m. on June 25, the last business day before the scheduled trustee's sale on June 26. Here, Plaintiff alleges that Defendant breached the contract by failing to reinstate the loan. However, Plaintiff does not allege that he ever paid Defendant any of the money required to entitle him to reinstatement. Instead, he suggests that he "indicated that he was ready, willing, and able to pay all amounts due and owing" by the deadline. (Doc. 1, ¶ 16.) He claims he also "expressed a preference" to pay using funds from his pension fund that would be available on July 1, after the deadline. (*Id.* at ¶ 17.) Looking only to the contract as written, Plaintiff did not meet the conditions to receive reinstatement simply by offering to pay or saying he could pay. Plaintiff therefore fails to allege facts that could constitute a breach of the contract.

Next, Plaintiff alleges that Chase agreed to modify the loan agreement to accept reinstatement payment after the statutory deadline and that Chase then breached the contract as modified by going forward with the trustee's sale. Plaintiff does not assert that this alleged modification was ever memorialized in writing. He provides the Court with a fax dated June 26, 2009, that he alleges he sent to Chase the day before the sale that shows he provided Chase with documentation that he was to have funds available from his pension fund on July 1, 2009. (Doc. 1-7.) A cover sheet attached to the documentation states, "I confirmed yesterday with Safeway Benefits Service Center, that my lump sum

distribution request was received, and will be distributed as requested on the earliest possible date, which is July 1, 2009." (Doc 1-7 at 1.) While this could imply that Plaintiff was under the impression that Chase would be interested in this information or had even requested the information, the fax does not actually mention any agreement between the parties. Plaintiff does not allege that the agreement was otherwise described in any writing. The Arizona statute of frauds states that "[n]o action shall be brought in any court in the following cases unless the promise or agreement upon which the action is brought, or some memorandum thereof, is in writing and signed by the party to be charged ….[u]pon an agreement… for the sale of real property or an interest therein." Ariz. Rev. Stat. Ann. §§ 44-101, 44-101(6). A mortgage is an interest in real property for purposes of the statute of frauds. *Fremming Const. Co. v. Sec. Sav. & Loan Ass'n*, 115 Ariz. 514, 516, 566 P.2d 315, 317 (Ct. App. 1977). The same goes for any modification of the terms of a mortgage loan. *See Diaz–Amador v. Wells Fargo Home Mortgages*, 856 F.Supp.2d 1074, 1080 (D. Ariz. 2012); *Best v. Edwards*, 217 Ariz. 497, 176 P.3d 695 (Ct. App. 2008); *Executive Towers v. Leonard*, 439 P.2d 303 (Ariz. Ct. App. 1968). As such, both the mortgage loan and alleged modification of that loan fall within the statute of frauds.

In order for Plaintiff to enforce the agreement against Defendant, he would need a writing describing the agreement, signed by Defendant. As Plaintiff has neither provided such a document nor alleged that such a document exists, he cannot establish a breach of this agreement as the agreement was never legally binding.

**IV.     Breach of the Covenant of Good Faith**

Plaintiff next alleges that Defendant breached the covenant of good faith and fair dealing by "disregarding its undertaking to accept reinstatement on the agreed terms and treating the Plaintiff in the same manner as if he had not tendered performance of the reinstatement obligations at all." (Doc. 1, ¶ 29.) As explained above, Plaintiff does not allege that he ever met the written contract's requirements to actually pay the amounts due in order to receive reinstatement. Further, any alleged oral modification of these

requirements was never legally binding under the statute of frauds.

A breach of the duty of good faith can occur only if Defendant did something "to prevent [Plaintiff] from receiving the benefits and entitlements of the agreement." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Fund*, 201 Ariz. 474, 490, 38 P.3d 12, 28 (2002).  Here, Defendant had no obligation to reinstate the loan because Plaintiff never met the required conditions. Without such an obligation, there can be no breach. Therefore,

**IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. 8) is **granted**.  The Clerk of Court is directed to terminate this action and enter judgment accordingly.

Dated this 12th day of November, 2013.

G. Murray Snow
United States District Judge